Good morning. May it please the court, counsel, my name is Russell Wood. I represent the former sheriff of Franklin County, Arkansas, Anthony Bowen. He was convicted under 18 U. S. C. 2 42, which is under color of law, allegedly violating some rights. He was convicted under the felony portion of that statute, which would require in addition to the violation of rights, bodily injury occurring on the alleged victim. And the first impression with this court court has, uh, there are some other places where that bodily injury definition occurs. Some other statutes. Those statutes are relevant to this particular situation. They deal with nuclear material, consumer product, witness intimidation and things like that. Now there are a couple of cases that have been cited regarding the definition when it comes to Section 2 42. Um, there was a string of cases cited in the briefs. But when you boil it down, essentially, um, we have the first circuit, which in passing in a footnote indicated that bodily injury definition. Um, it basically says usually sufficient bodily injury of the person experiences pain. Um, however, temporary of whatever nature it is. Um, and they endorsed that definition. The 10th Circuit. But that was in a footnote. 10 circuits also address that it's in services. Yes, we don't require any sort of the minimus exception to that definition. However, the Fifth Circuit, Mr Wood, before you get too far into the weeds of the case law, I'm wondering whether this issue has been preserved. Um, it's my understanding that there was no objection to the instruction that said any injury, even pain, um, counts. And so if that's true, I'm wondering if this issue is preserved for us. I think it's been preserved. It was addressed. Number one. We did object to that instruction as the court and the parties were submitting proposed instructions back and forth. Um, we did have an objection to the definition. We stated that it should have a de minimis, um, exception to this, and the court overruled that objection while considering the proposed jury instructions from both sides. Therefore, you know, four minutes ruling on that and already accepted the Eighth Circuit model jury instruction on this. My position on that is that while the model jury instruction is informative and has been approved, it certainly has those typically are not subject to the same type of scrutiny and consideration that we're dealing with here today in this appeal. And so we made our objections before made this ruling said that it was going to go with that model jury instruction. And, uh, well, counsel, I thought this was a plain error case, even by your stand. Did you not make a specific objection? Tell me you agree the standard is at best plain error. Well, we are feeling the sufficiency of the evidence in relation to our motion to quit motion for a new trial. And so under those under that is a no. But you say you objected the instruction to try Yes, on this basis. Yes. Well, I objected to the proposed jury instructions. Government submitted the Eighth Circuit model that just has no matter what, pain of any sort. We objected to that to the court in writing because the court submitted the proposed. We were to put our objections underneath those and submit those back to the court. The court ruled that objection and said that we want to go with the Eighth Circuit model. Okay, but then rather than appeal the sufficiency of the evidence, shouldn't you be appealing the jury instruction, the accuracy of the jury instruction? Well, I also believe that there was not sufficient evidence to because the model jury instructions that's that's that's not that has never been determined. There was probably sufficient evidence. If you buy the jury instruction as being acceptable, there was probably sufficient evidence that these two people experienced at least some pain, right? We would also say no. There was not. There was not sufficient evidence to show that they had any injury. Well, no way. Take take it. Most favorable to jury. Somebody hits their head in the ground. I mean, you know, that's a jury question. Percy. Yes. My position would be that we objected to that jury instruction, and we did that in the course of the procedure that the court put in place for us to propose those jury instructions, make our objections to those jury instructions, which we did and indicated that this should have a de minimis exception to it, that there needs to be some sort of pain or injury that's more than de minimis the court. Yeah, but that's not your argument on appeal. Now, your argument on appeal is the evidence is insufficient to show what the instruction that you're not challenging on appeal didn't meet. I understand you're saying even if it is pain, they didn't meet that. That may be an uphill battle given Judge Benton's question, but I don't know. It seems to me there's some sort of incongruity going on here in terms of what we have to decide. Well, I would I would before that number one, the most there's insufficient evidence on to not grant our motion for acquittal and for a new trial. And our position is that the better position is that there should be a de minimis exception to this injury requirement of 2 42, especially in light of it being a situation where we're under the color of law with police officers in the nature of the individuals that they deal with on a consistent basis to allow them to just have this subjective. I felt a little bit of pain allows these police officers to be open for liability or criminal prosecution with no standards. And like in this particular case, Mr Green, he was incredible person who told multiple stories. They didn't even call him to try to testify that he sustained any injury or felt any pain or anything. They simply did not call the alleged victim and use the testimony of a couple of other people and then use the jury instructions. It's all the jury. But you can just use your common sense and you can infer from your or what you, uh, you know, your general experiences in the world. And you can point that out to the jury to write counsel. Yes. Well, and did you point that out the jury? They didn't call green. We Yes, I was able to. The district court limited limited me in pursuit to the government's motion and limiting to mentioning anything about witnesses that could have been called that the government did not call. And so that was really put myself and our team in a spot because we didn't want to violate that limiting order. And that's the way that we took it is that you can't say, Well, Green's not here because he didn't have any injury or he would have testified like that. The district judge shut that down and told us that we could not address that. So that was a very fine line that I was trying to walk. Um, and it puts a bad position to be able to talk about the fact that he didn't show up. He never. There's no testimony from Green that he felt any injury of any kind whatsoever. Um, and in fact, the testimony was he provided three different versions of what happened with three different. But ball ball and Miller were willing to testify. They were about what happened then, right? That's correct. Yeah, proceed. That's correct. Um, but that's our that's our position. The other issue, um, that came up at trial was the fact that um, this jail is so old, it didn't have anywhere to keep this guy due to the nature of his charges that involved 11 month old baby. Um, everywhere else was full. There's one felony pod, one misdemeanor pod. The guy had already been attacked. Uh, when we first put him in isolation cell had a murder suspect in it. Drunk tank had to be left open. So they had to house him in this room at a bench and have a door. So they shackled him, put up one of the longer leg shackles on his ankle, put it on the bench and that's where he was housed. Now I represent a lot of police officers been all over the state and a lot of jails. I didn't even know a jail like this still existed. Um, and that was no fault of the sheriff because it's a funding issue. He worked for 10 years to finally a new jail built. Ironically, they asked him to give the dedication for when, while he was out of bond for this case. Um, so that's the only place that they had to house this guy shackled to a bench. They would take his mat in the morning, he would stay in there, you know, they would unshackle him and he could, you know, go do, you know, whatever he needed to do. But when he was housed, um, they at night they bring you as bad as pot or you see referred to as the shower. We're just showering there. You said there's no door had a shower. I was just hurt. Uh, so there's no way to keep them in there if he wanted to go anywhere. And so we were, we were not allowed to explain to the jury why he was housed in the spring. I thought the government and again, Miller, I thought they made that clear to the jury. Mhm. What's that? That why he was there and why, why he was shackled in the conditions of this room. Okay. You kind of like what you've just described, right? That's not mine. We were not allowed to fully explain to the jury. They told him that he was shackled and maybe he was being kept in there. But the reason why he was being kept in there, um, the budget constraints, the lack of space, he'd already been attacked somewhere else. There was nowhere else. They even had even some people in the filing room. Um, and so we believe that this was a bias that was, uh, allowed the jury to continue with and, um, that no reasonable juror could look past this. I thought there was evidence allowed about lack of room, perhaps not budgetary constraints and other sort of I thought there was evidence of lack of room was why he was in that room. Well, I don't believe that it was ever fully explored. There may have been some testimony about that, but not that not that we believe that would have allowed a jury to understand why this guy was shackled. If I would have been on the jury, I would have been biased against him myself because I didn't even know this kind of situation still occurred. But it was only necessitated by the circumstances that the sheriff was dealing with. Um, and so not being able to fully explore that and explain to that to the jury, we believe allowed a but you do agree that the government mentioned the housing issue and the reason for the use of the shower room in the in its opening statement. Again, they may have, um, address that superficially. I don't know that that's not evidence. And then I've noted here, uh, jailer Cowan patrol deputy Miller. Um, both mentioned the use of the shower room because there was no other space. Yes, sir. But what's what's left? What's left for the imagination? Well, I don't think that fully explains the situation. Just them telling saying that there was limited space. And so they shackled him to a bench. I don't believe fully explains to the jury what the situation was. Any further questions? Mhm. Okay. Good morning, Your Honor. It's Jason Lee for the United States. Um, this court should affirm Bowen's convictions and sentence. There's been a number of issues raised on appeal to evidentiary rulings by the district court. A challenge to the standard for bodily injury that the jury was instructed to use the sufficiency of the evidence underlying both convictions, the application of an obstruction of justice, sentencing enhancement as well as the substantive reasonableness of the sentence itself. I'm happy to with the standard for bodily injury that this panel discussed with defense counsel. Judge Grinder, you question you ask whether or not this issue had been preserved as the government explained in its brief. The proper standard here is plain error. Um, contrary to what defense counsel or opposing counsel just mentioned, there was no objection to the instruction for bodily injury at trial. I believe opposing counsel is referencing an inclusion requested inclusion of a defense instruction on state law and whether or not there might be some self defense basis, um, that could defend against the charge. There was an objection raised to the non inclusion of that, but that's entirely unrelated to the bodily injury instruction. It was. There's certainly nothing cited in the record for when defense counsel raised this supposed objection, and it was not. This argument was not made in argument. Did any did any aspect of the proposed defense instructions include the concept of de minimis injury? No, not that I've ever seen. And in fact, defense opposing counsel here mentions his motion for a judgment of acquittal. That's his alternative basis for finding to no overview. This de minimis injury argument was not raised in the motion for judgment of acquittal. So regardless of whether or not this court construes this as a related challenge to the jury instructions where there was none or a appeal from the motion for a judgment of acquittal in neither context was this argument regarding de minimis de minimis injury raised. So it's plain error either way. So in the motion for judgment of acquittal, they did not argue that the evidence was insufficient to prove injury. They argued that the evidence was insufficient, but not because de minimis injury does not raised. So what they're asking the court to do here is to find insufficient evidence based on a standard that the jury was not told to use. And so here that's why plain error applies. And under that standard, there's no basis for finding misinstruction of the jury or that the district court at all erred in instructing the jury regarding bodily injury. The court need not decide whether or not de minimis injury is or is not sufficient, because either way the evidence is sufficient. The evidence shows greater than de minimis bodily injury. You had, as some of the panel members have mentioned here, firsthand witness testimony by two different individuals who saw Bowen strike Zachary Green seven to nine times. You had testimony from two dispatchers who heard the strikes 30 to 50 feet away from a soundproofed room. That's a sufficient basis construing the evidence and the like most favorable. Is it true what counsel said that he was prohibited from commenting about the absence of witnesses? The specific ruling on the motion eliminated was that neither party was permitted to reference the absence of a witness that could have been called by either party. So if there was, for example, a defense counsel had been able to call witness A and the government didn't, then defense counsel could not point out during their closing, hey the government didn't call witness A, because defense counsel could have called witness A. That was the extent of the ruling on the motion eliminated. I'm happy to entertain any other questions regarding the bodily injury or sufficiency of the evidence. The one thing I would like to point out is this notion that the alleged assault was impossible, that is quintessentially a jury question. Here, at most, there was conflicting testimony about the dimensions of the room that was housing Zachary Green, and the jury was entitled to decide whether or not, based on the credibility of the witnesses they heard, whether or not they believe the testimony of Deputy Miller. The district court specifically did, in its sentencing hearing, it noted that explicitly that it believed every word of Deputy Miller's testimony, and in the hearing on defense counsel's motion for a judgment of acquittal, it further stated, I wouldn't be surprised if the jury had the same impression, and also noted that the court visually observed the jury hanging on Deputy Miller's every word. So certainly there was sufficient evidence underlying Zachary Green, the conviction regarding Zachary Green. Unless there are questions on that issue, I'm happy to turn to the issue regarding shackling. I just want to point out that nowhere in any of the trial transcripts, certainly no portion of the transcript that was cited by the jury, was there any implication that Bowen personally had any involvement in where Zachary Green had been held, or the fact that he had been shackled. To the contrary, the testimony was that it was a matter of practice, it was general routine, that when a person's held in the shower room, they have to be shackled to the bench, and that's a practical necessity, because there's no door that would explain that right at the outset in its opening statement. As Judge Sheppard noted, there was testimony from Deputy Ball and Dispatcher Dakota Cohen's explaining the necessity for that. So certainly the jury was contextualized, there was contextualizing testimony regarding the nature of the shackling. Opposing counsel suggests that there was simply no testimony regarding kind of overcrowding issues that led to Zachary Green being held in the shower room. That's simply inaccurate. There were seven pages of questioning regarding the types of facilities, the types of rooms, the types of cells in the in the jail, as well as the overcrowding that was happening at the time. That's pages 764 through 771. And to the extent that opposing counsel is challenging the inability to explain why Zachary Green himself was held in the shower room, to the extent that that's the challenge, this witness didn't know, in response to two questions by defense counsel, why was Zachary Green being held in the shower room, which is page 765 of the trial transcript, the witness said, I don't know. So even if defense counsel had had some inclination to ask this witness, you know, why was he held in the shower room, this witness didn't have that knowledge and defense counsel simply should have asked someone else, perhaps Deputy Miller, but defense counsel never did. There is a slight suggestion in the opening brief that the government gratuitously referenced the fact that Zachary Green had been shackled. That's subject to a plain error review. The district court specifically permitted defense counsel to object if the government's references became gratuitous. That's the language used in the opening brief here. The government gratuitously referred to shackling again and again. So it's plain error because the district court invited defense counsel to raise the objection that he's now raising on appeal. That challenge fails because, as the district court cogently explained, the fact that Zachary Green had been shackled was highly relevant evidence to whether or not the government could prove and carry the burden of showing unreasonable force. The fact that Zachary Green had been shackled at the time was intrinsic to whether the force used by Bowen against him was reasonable or unreasonable. For that reason, there's no error by the district court in permitting the government to emphasize a point that was relevant to an issue on which it bore the burden of proof. There's also been some arguments made regarding evidence and testimony regarding some policies at the jail, a use-of-force policy, an inmates' rights policy. Opposing counsel suggests that it was error to introduce them because there was no evidence of the sheriff's training. That's subject to plain error review. I believe on pages 14 and 15 of opposing counsel's opening brief he admits that he did not raise a foundation argument, and so it's plain error here as well. And under that standard, there was certainly sufficient evidence on which the jury could have inferred familiarity by Bowen as to these two policies. There was testimony that these policies were handed out as a matter of practice to inmates when they arrived at the jail, that all employees were required to comply with it, that every deputy, deputies that Bowen supervised and hired, that every deputy knew about this policy regarding the inmates' rights policy that would have been posted on the booking area. The booking area of the jail, you know, as long as certain deputies could remember, it was given out as a matter of practice to inmates, to detainees when they arrived at the jail. That's sufficient on which to find that that Sheriff Bowen knew about these policies and permitted their introduction, and of course any jury confusion was mitigated by the limiting instructions that were repeatedly given any time these policies were discussed in witnesses testimony, when they were admitted and read into the record, and then again before jury deliberations and the final jury instructions. I'm happy to discuss any questions that the panel has regarding. I do have a question about the obstruction of justice enhancement. Yes, your honor. And what do you say about some of this evidence that I read that I think you could argue that it would be in the realm of a person who is, understands that they are under criminal investigation by the government, arising from a particular incident, and then that individual discusses the incident with fact witnesses. And I'm a little concerned about that in and of itself being used later to support an obstruction of justice enhancement. I think application of the enhancement in that context is of course subject to great deference by the district court, who has the ability to judge the demeanor of the witnesses and judge in context of the trial whether or not that actually represents obstruction. Here, under the clear error standard, which is the one that applies, there's there's no clear error by the district court in finding that there was a preponderance of the evidence showing obstruction. And I think the contextualizing factors pointed out by the district court resolve some of your concerns, Judge Shepard. Here at the sentencing hearing, the judge specifically noted the context of the call was Bowen knew, A, that there was an investigation by the FBI, and B, there was a possibility that he might have to talk to the FBI or might receive a subpoena. And that was the context in which the call on which the district court relied occurred. And so given that context, what do we say if we have to talk to the FBI? Those statements certainly support the district court's finding of obstruction, where the only eyewitness is here. No one can contradict our testimony, and there's nothing on camera. The district court found that the only inference that could be reasonably drawn, given those statements and given the larger context, was, hey, if we align our stories, we don't have anything to worry about. And we know what that story was because Deputy Ball specifically testified as to what that story was that Bowen wanted him to tell the grand jury. That was the Zachary Green gut in his face. So all of that testimony, the larger context behind the call, certainly showed no clear error by the district court in applying this enhancement. So is that the specific conversation that you would rely on with respect to this enhancement? We would rely on that. That was the sole basis for the district court. But of course, this court also can affirm on any basis that's evident in the record. There was also testimony in trial by Deputy Ball about another conversation he had with Sheriff Bowen, and that's when Bowen told him, or in some way communicated to him, that when you go in to talk to the grand jury, tell them Bowen, tell them Green got in my face. I'm sorry. Bowen told Ball that when he talked to the grand jury, he should say Zachary Green got in Bowen's face. That's an alternate basis on which this court could affirm. But the district court did not rely on that? Did not rely on it, but this is also a brief argument regarding substantive reasonableness, as explained in the government's brief. There's no assertion of any error in the judge's sentencing analysis, and no argument sufficient to overcome the presumption of reasonableness afforded to this within-guideline sentence. So unless there are any other questions by the panel, this court should affirm Bowen's convictions and sentence. Thank you, Mr. Lee. Mr. Wood, your rebuttal. On the impossibility issue, and Mr. Miller, the court referenced his testimony. However, Mr. Miller also, Dalton Miller also testified that, I mean he's a big guy, 6'5", 6'6", or something, that this person with Green laying down with his head propped up against the back wall of this room, that he might could hit the guy, but not a normal, a normal person wouldn't be able to reach him. And that was his exact testimony, and the sheriff beat his 5'10", 5'9", 5'10". So, I would point out that there's a picture submitted in the record, I think it's 5H for the government's exhibit. Clearly, all the testimony was that Bowen was outside the shower room, never went inside the shower room, never got down on his hands and knees to get, and from outside he was able to reach this guy who's laying down with his head propped up, on the floor with his head propped up, reach into the shower room, hit this guy, and that's completely impossible. And it doesn't matter what the testimony, if people say they can do that all day long, if the facts are that you can't do that, then that's an impossibility issue, it just can't happen. And both Ball and Miller said that that's the way that it happened. So, that's an impossibility. Additionally, the use of force policies, the government never established that he had been trained on those use of force policies, that they're all testimony that had been there forever, and they were for detention officers, because they're uncertified, 18, 19 year old kids that come to work in the jail, and those use force policies were more constrictive than the constitutionally allowable use of force, and they had been there forever, and so that entered a different standard into the jury room to cause confusion over exactly what the use of force requirement was that they were supposed to decide. The obstruction call, he doesn't say anything. There's no him telling Ball what to say. It was a set up phone call with the FBI agent there, with Ball. Ball's a seasoned interrogator, knew what they were supposed to try to elicit from Bowen. He could have said anything. Oh my gosh, what are we going to do? We beat that guy. What do you want me to tell him? Oh my gosh, you know, you did this, you threw him down and banged his head on the floor. What should I tell him? I'm scared. I mean, tell me what? He didn't do any of that. It was just simply a recitation of the facts of what happened, and that was all. So we would ask that this court grant a new trial for Bowen. Thank you both for your appearance and briefing. Case is now submitted, and we will issue an opinion in due course.